COUNTY OF LEWIS; Don Fortney; Thomas F. Myers, Plaintiffs–Appellees,

v.

John D. ALLEN, Defendant,

Nez Perce Tribe; Nez Perce Tribal Court; Judges of the Nez Perce Tribal Court, Defendants–Appellants.

No. 94–35979.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 1995.

Withdrawn From Submission March 20, 1997.

Resubmitted July 1, 1997.

Decided April 23, 1998.

Amended May 5, 1998.

Second Amendment July 24, 1998.

Rehearing En Banc Granted and Opinion Withdrawn July 31, 1998.

Argued and Submitted Sept. 24, 1998.

Decided Dec. 11, 1998.

510

Douglas Nash, Office of Legal Counsel, Nez Perce Tribal Executive Committee, Lapwai, Idaho, for the defendants-appellants.

Marc A. Lyons, Ramsden & Lyons, Coeur d'Alene, Idaho, for the plaintiffs-appellees.

Michele Odorizzi, Mayer, Brown & Platt, Chicago, Illinois, for amicus curiae Burlington Northern Railroad Company.

Michael E. McNichols, Clements, Brown & McNichols, Lewiston, Idaho, for amicus curiae North Central Idaho Jurisdictional Alliance.

Melody L. McCoy, Native American Rights Fund, Boulder, Colorado, for amicus curiae Fallon Paiute–shoshone Tribe.

C. Wayne Howle, Deputy Attorney General, Carson City, Nevada, for Amici curiae the States of Nevada, Utah, Montana, California and Oregon.

Before: HUG, Chief Judge,
SCHROEDER, BOOCHEVER, KOZINSKI, THOMPSON, O'SCANNLAIN, TROTT, FERNANDEZ, KLEINFELD, SILVERMAN, McKEOWN, Circuit Judges.

McKEOWN, Circuit Judge:

We are called upon to determine tribal jurisdiction in a circumstance involving a law enforcement agreement between two governmental entities, the Nez Perce Tribe and the State of Idaho. Under that agreement, the tribe consented to state jurisdiction over certain minor crimes. As a result, the tribe granted County of Lewis law enforcement officers authority to come onto the reservation to patrol, investigate and make arrests for these misdemeanors. Acting under authority of the tribal-state arrangement, a deputy county sheriff arrested a tribal member within the reservation for disturbing the peace. The state court dismissed the charge. The tribal member then brought suit in tribal court against the county and its law enforcement officers, claiming false arrest, other torts and a civil rights violation stemming from the arrest. After the Tribal Court of Appeals affirmed a tribal court jury verdict against the county and its officers, they brought a federal court declaratory judgment action challenging tribal court jurisdiction. The district court held that the tribal court lacked jurisdiction over the non-Indian defendants. A three-judge panel of this Circuit agreed and affirmed. We granted rehearing en banc. *County of Lewis v. Allen,* 141 F.3d 1385 (9th Cir.), *withdrawn and reh'g en banc granted,* 149 F.3d 1228 (9th Cir.1998). After supplemental briefing by amici curiae and further argument, we conclude that this case turns primarily on the agreement between the tribe and the state. We affirm the district court's decision. The tribal court lacked jurisdiction and the district court properly enjoined enforcement of the tribal court judgment.

## BACKGROUND AND PRIOR PROCEEDINGS

### The Law Enforcement Agreement

The Nez Perce Indian Reservation encompasses virtually all of Lewis County, a political subdivision of the State of Idaho. Within the reservation itself, land ownership is a patchwork of land held in trust for the tribe by the federal government ("tribal trust land"), Indian fee-land, and non-Indian fee land.

In 1965, the Nez Perce Tribal Executive Committee, the governing body of the reservation, passed a resolution consenting to have Idaho "assume and exercise concurrent criminal jurisdiction over offenses other than those known as the major crimes, committed by Indians living on the reservation." These minor crimes included battery and disturbing the peace. This resolution ("the Agreement") is variously referred to as a law enforcement agreement, compact or arrangement. Prior to the Agreement, the Nez Perce tribe had exclusive jurisdiction over the prosecution of Indians for minor criminal offenses arising on its reservation. Under the Agreement, the tribe gave up this exclusive right.

The Agreement was a consequence of major legislation affecting Indians, known as "Public Law 280." Passed in 1953, Public Law 280 permitted states to assume criminal and civil jurisdiction over cases involving Indians in Indian country. 18 U.S.C. § 1162; 25 U.S.C. § 1321–1322; 28 U.S.C. § 1360. In 1963, pursuant to Public Law 280, Idaho passed legislation assuming jurisdiction over cases involving seven specific matters arising in Indian country, e.g., juvenile delinquency, domestic relations and mental illness, but not the crimes at issue here. Idaho Code § 67–5101. The legislation also provided that a tribe could negotiate individually with the state to extend state jurisdiction over other matters. Idaho Code § 67–5102. Two years later, in 1965, the Nez Perce Tribe and the State of Idaho entered into the compact at issue, extending state criminal jurisdiction to certain minor crimes.

### Allen's Arrest

The chain of events leading to this jurisdictional dispute started in 1986 when a woman named Jennifer McAllister (not a party to any of the lawsuits) called the Lewis County Sheriff's Office and complained that she had been battered by a bartender. In response, acting under authority of the tribal-state Agreement, a deputy sheriff went to John Allen's house on the reservation to interview McAllister. Allen, his wife and McAllister were all intoxicated, having been drinking together at a bar. As the deputy attempted to interview McAllister, Mr. and Mrs. Allen continually interrupted him and he was unable to proceed. When the deputy announced that he was leaving and that they could call the Sheriff's Office in the morning, the Allens shouted obscenities at him, and Mr. Allen doubled up his fist and challenged the deputy to fight. The deputy warned the Allens that if they did not quiet down they would be arrested. Although Mrs. Allen quieted down, Mr. Allen ignored this warning and kept yelling. The deputy then arrested him for disturbing the peace in violation of Idaho Code § 18–6409 and placed him in the county jail. Allen was prosecuted in state

court on the charge of disturbing the peace, but the charge was dismissed after a jury trial. The state magistrate found that "the only peace disturbed was that of [the][o]fficer" and that "it is Stare Decisis that a police officer is not a 'person' under the Disturbing the Peace statute."

### Tribal Court Proceedings

Following the state court dismissal, Mr. and Mrs. Allen filed suit in Nez Perce Tribal Court against the sheriff, the deputy sheriff, and the county for false arrest, assault and battery, false imprisonment, malicious prosecution, and a federal civil rights claim under 42 U.S.C. § 1983. Allen is a member of the Nez Perce tribe; his wife is not. From the outset of the proceedings, the county defendants objected to tribal court jurisdiction. The tribal court held that under the Nez Perce tribal code, it had jurisdiction over claims of wrongful damage to person or property that occurred within the exterior boundaries of the Nez Perce Reservation. Allen's arrest and his imprisonment in the Lewis County jail occurred within the reservation boundaries. Although Allen's residence was not on tribal trust land, the parties did not establish the precise status of the land.[1]

A jury composed of six Nez Perce tribal members found that the deputy sheriff intentionally or wantonly violated Allen's liberty interests and violated clearly established state law. In a special verdict form, the jury found that the deputy, the sheriff, the county, and Allen himself were all negligent, Allen's wife was not negligent, and the proximate cause of Allen's injuries was the conduct of the county defendants. The jury further found that the damages to Allen were attributable 45% to the deputy sheriff, 25% to the sheriff, 10% to the county, 10% to Allen and 10% to his wife. Despite finding that the deputy sheriff acted in good faith and did not intentionally injure Allen, the jury awarded Allen $10,000 in punitive damages in addition to $2,730 in compensatory damages.

On appeal to the Nez Perce Tribal Court of Appeals, the county defendants again challenged jurisdiction. The Tribal Court of Ap-

---

1. Allen's residence is on fee land not owned by the tribe or the federal government, but the record does not reflect whether the fee is owned by an Indian or non-Indian. Allen did not claim that he owned the property.

peals affirmed the tribal trial court on all grounds, explaining that jurisdiction over the non-Indians existed because: (1) the Nez Perce tribal code provides for tribal court jurisdiction over civil actions against non-Indians arising within or affecting the Nez Perce reservation; and (2) protecting residents from wrongful conduct of law enforcement officers operating within the exterior boundaries of the Nez Perce reservation "is a legitimate safety concern."

### Federal Court Proceedings

Having fully exhausted their remedies in tribal court, the county defendants brought a declaratory judgment suit in federal district court against Allen, the Nez Perce Tribe, the Nez Perce Tribal Court and the Judges of the Nez Perce Tribal Court. The district court granted summary judgment in favor of the county and its officers, issued a declaratory judgment that the tribal court judgment was void for lack of jurisdiction, and enjoined enforcement of the judgment.

### ANALYSIS

### I. Federal Question Jurisdiction

We reject the tribe's argument that Lewis County's complaint does not allege any claim based on federal law and that therefore the district court lacked jurisdiction under 28 U.S.C. § 1331. "[F]ederal courts have authority to determine, as a matter 'arising under' federal law, *see* 28 U.S.C. § 1331, whether a tribal court has exceeded the limits of its jurisdiction." *Strate v. A–1 Contractors,* 520 U.S. 438, 117 S.Ct. 1404, 1411, 137 L.Ed.2d 661 (1997) (citing *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 852–853, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985)). On the face of its federal court complaint, the county alleges that the tribal court exceeded its jurisdiction and violated federal constitutional and statutory rights. Accordingly, we have jurisdiction under 28 U.S.C. § 1331.

### II. Civil Tribal Jurisdiction

#### A. The Supreme Court Framework

Jurisdictional disputes have been called "[t]he most complex problems in the field of Indian Law." William C. Canby, Jr., American Indian Law 111 (1998). Fortunately, two Supreme Court cases serve as the foundation for our analysis: *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) and *Strate.* Together these cases provide the present contours of tribal civil authority over non-Indians.

*Montana* held that a tribe had no power to regulate hunting and fishing by non-Indians on non-Indian fee land within the reservation. The Supreme Court set forth a "general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe," 450 U.S. at 565, 101 S.Ct. 1245, citing to the principles of an earlier case on tribal criminal jurisdiction. *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978). The Court, however, underscored that "[t]o be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands." 450 U.S. at 565, 101 S.Ct. 1245. The Court then articulated what are known as "the *Montana* exceptions": tribal jurisdiction will lie (1) in the context of "consensual relationships" between a nonmember and a tribe or a member of a tribe and (2) where necessary to preserve tribal self-government. *Id.* at 565–66, 101 S.Ct. 1245.

More than 15 years later, in *Strate* the Supreme Court held that *Montana* applied equally to the adjudicatory authority of tribal courts. The Court echoed *Montana's* limits on tribal jurisdiction over nonmembers:

> Our case law establishes that, absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances.

117 S.Ct. at 1409.

*Strate* termed *Montana* "the pathmarking case concerning tribal civil authority over nonmembers" and succinctly restated the *Montana* rule:

> *Montana* thus described a general rule that, absent a different congressional direction, Indian tribes lack civil authority

over the conduct of nonmembers on non-Indian land within a reservation, subject to [the] two exceptions....

117 S.Ct. at 1409–10.

*Strate* concerned a tribal court lawsuit between non-Indians arising from a car accident. The accident occurred within a reservation on a public highway maintained by the state under a federally-granted right-of-way. Analyzing the grant of the right-of-way, the Court found that with the exception of the right to construct crossings, the tribes "expressly reserved no right to exercise dominion or control over the right-of-way." *Id.* at 1414. The tribes "retained no gatekeeping right," having given up the "landowner's right to occupy and exclude." *Id.* For purposes of determining jurisdiction over a nonmember, the Court "align[ed] the right-of-way ... with land alienated to non-Indians," *id.*, and held that *Montana* therefore governed. *Strate* specifically expressed "no view on the governing law or proper forum when an accident occurs on a tribal road within a reservation." *Id.* at 1408.

### B. The Law Enforcement Agreement Between the Tribe and the State

■ Against this backdrop of Supreme Court authority, we now turn to the specific circumstances of this case. Central to our decision is the Agreement between the tribe and the state.

Historically, the Nez Perce tribe had exclusive criminal jurisdiction over minor crimes committed by Indians on the reservation. That exclusivity changed, however, when the Nez Perce Tribe consented to have Idaho "assume and exercise" concurrent criminal jurisdiction. Under the Agreement, county law enforcement officers (as agents of the state) have an express right to come onto the reservation and exercise jurisdiction over Indians. They have authority to patrol the reservation, investigate minor crimes and make arrests. The logical consequence of this arrangement is that the officers should not be subject to tribal court civil jurisdiction

for conduct arising directly out of their criminal law enforcement activities. This consequence does not mean that tribal members are without a remedy-they may file suit in state or federal court.

The circumstances in *Strate* are analogous. Like the tribes in *Strate*, which consented to and received payment for a highway easement, the Nez Perce Tribe ceded its "gatekeeping right," by consenting to and receiving the benefits of state law enforcement protection. The tribe gave up its landowner's right to exclude state officials engaged in law enforcement activities on the reservation. This is a significant alienation of tribal sovereignty and control. *See Brendale v. Confederated Tribes and Bands of The Yakima Indian Nation*, 492 U.S. 408, 423–24, 109 S.Ct. 2994, 106 L.Ed.2d 343 (1989) (plurality opinion) (the tribe lacked authority to zone fee lands owned by nonmembers within the reservation because the tribe did not have the power to exclude nonmembers from access to their land). Having ceded that right, the tribe cannot now assert tribal jurisdiction over non-Indian law enforcement officers for activities arising directly out of the arrangement.[2] The deputy sheriff, whom the tribal court jury found acted in good faith and without intent to injure Allen, simply carried out the mandates of the Agreement when he arrested Allen within the reservation. From the standpoint of the exercise of adjudicative authority over nonmember county law enforcement officers, it does not matter how the land was owned because the consent to criminal jurisdiction was tantamount to alienation of the land to non-Indians for this limited purpose. The analysis of *Strate* controls: We hold that the tribe lacks civil jurisdiction over a tort claim against county officials arising from their law enforcement activities under an agreement which divested the tribe of exclusive control and power to exclude those officials from the reservation.

### C. The *Montana* Exceptions

■ The tribe argues that whatever the general rule may be, tribal jurisdiction exists

---

2. This case is distinguishable from *El Paso Natural Gas Co. v. Neztsosie*, 136 F.3d 610 (9th Cir.), cert. granted, —— U.S. ——, 119 S.Ct. 334, 142 L.Ed.2d 275 (1998), in which we held *Strate*

inapposite because the reservation land in question was "neither open to the public nor controlled or maintained by any entity other than the tribe." *Id.* at 618 n. 5.

under both *Montana* exceptions. The first *Montana* exception, "consensual relationships," provides:

> A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.

450 U.S. at 565, 101 S.Ct. 1245.

Montana's exception for suits arising out of consensual relationships has never been extended to contractual agreements between two governmental entities and we decline to hold that the exception applies to an intergovernmental law enforcement agreement.[3] The type of consensual arrangement the Court had in mind is evident from the cases cited in *Montana* as examples of the first exception. *Id.* at 565–66, 101 S.Ct. 1245; *see, e.g., Williams v. Lee,* 358 U.S. 217, 223, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 152–53, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980). These cases involve either direct regulation by a tribe of non-Indian activity on the reservation or lawsuits between a private party and the tribe or tribal members arising from an on-reservation transaction or agreement. *See also FMC v. Shoshone–Bannock Tribes,* 905 F.2d 1311, 1315 (9th Cir.1990) (tribal jurisdiction existed over non-Indian business that entered mining leases and contracts with a tribe). As in *Strate,* the Agreement between the tribe and the state is not a " 'consensual relationship' of the qualifying kind." 117 S.Ct. at 1415.

■■■■ The second *Montana* exception extends tribal jurisdiction over conduct that "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." 450 U.S. at 566, 101 S.Ct. 1245. The Nez Perce Tribe's effort to invoke this exception is at odds with the decision to surrender voluntarily its exclusive sovereignty in minor criminal matters. Although broadly framed, this

exception is narrowly construed. *Strate* puts the exception in its proper context:

> Read in isolation, the *Montana* rule's second exception can be misperceived. Key to its proper application, however, is the Court's preface: "Indian tribes retain their inherent power [to punish tribal offenders,] to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members.... But [a tribe's inherent power does not reach] beyond what is necessary to protect tribal self-government or to control internal relations."

117 S.Ct. at 1416 (quoting *Montana,* 450 U.S. at 564, 101 S.Ct. 1245).

■■■■ As explained in *Wilson v. Marchington,* 127 F.3d 805, 815 (9th Cir.1997), the tribal court plaintiff's status as a tribal member alone cannot satisfy the second exception. Nor is it sufficient to argue, as the tribe does, that the exception applies because the tribe has an interest in the safety of its members. That simply begs rather than answers the question. Under the tribe's analysis, the exception would swallow the rule because virtually every act that occurs on the reservation could be argued to have some political, economic, health or welfare ramification to the tribe. The exception was not meant to be read so broadly. *Strate* instructs that the "cases cited in *Montana* indicate the character of the tribal interest the Court envisioned." 117 S.Ct. at 1415. The question is whether a state's "exercise of authority would trench unduly on tribal self-government." *Id.* In fact, here it was an exercise of self-government to yield the law enforcement function to the state. Having divested itself of sovereignty over the very activities that gave rise to the civil claim, nothing in this case can be seen as threatening self-government or the political integrity, economic security or health and welfare of the tribe. The exception must be read to "sufficiently protect Indian tribes while at the same time avoiding undue interference with state sovereignty." *Brendale,* 492 U.S.

---

**3.** Significantly, the tribal parties, which include the Nez Perce Tribal Court, argue to this court that *Montana* 's first exception applies, but in the original proceeding, the Nez Perce Tribal Court

considered whether the "non-Indian[s] entered into a consensual relationship with the tribe or its members" under *Montana* and concluded that "this has not occurred."

at 431, 109 S.Ct. 2994. Surely subjecting county law enforcement officers to suit in tribal court is not necessary to protect Indian tribes or their members who may pursue their causes of action in state or federal court.

### D. Exhaustion

 The tribe argues that we should remand to the district court with instructions to abstain while the tribal courts reconsider the question of tribal court jurisdiction in light of *Strate*.[4] Although the exhaustion rule of *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) and *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987) allows tribal courts to determine whether tribal court jurisdiction exists in the first instance, the Nez Perce Tribal Court and the Nez Perce Tribal Court of Appeals already answered this question affirmatively. Exhaustion has occurred. Further, the tribal court exhaustion rule is " 'prudential,' not jurisdictional." *Strate*, 117 S.Ct. at 1412. Because we hold that tribal court jurisdiction does not exist under *Montana* and *Strate*, remand would be futile, serving only to delay judgment day in a case that began in tribal court eleven years ago. The time has come to close this matter.

### CONCLUSION

The tribal court lacked jurisdiction to adjudicate the claims against the county defendants because the tribe divested itself of exclusive sovereignty over law enforcement activities arising under the Agreement between the tribe and the state. Neither *Montana* exception applies to extend jurisdiction in the circumstances of this case.[5]

AFFIRMED.

---

**4.** One of the amici also suggests remand to develop the record on ownership of the land. This is unnecessary in light of our holding.

**5.** As the panel opinion concluded, we need not reach the questions raised by (1) the County's motion to remand for a determination of whether the Nez Perce reservation has been disestab-

---

lished; (2) the Tribe's motion for sanctions against the County for making that motion; and (3) the defendants' argument that subjecting them to jurisdiction in a tribunal in which non-members of the tribe would be excluded from the jury violates the Equal Protection Clause.