**Michael BOXX, Plaintiff–Appellee,**

v.

**Heather Long WARRIOR, Defendant–Appellant.**

**No. 00–35073.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 19, 2001.

Filed Sept. 6, 2001.

As Amended on Denial of Rehearing and Rehearing En Banc Nov. 20, 2001.

S. Rep. No. 97–307, at 57.

D. Michael Eakin, Montana Legal Services Ass'n, Billings, Montana, for the defendant-appellant.

Michael Northcutt, Missoula, Montana, for the plaintiff-appellee.

Before: PREGERSON, TASHIMA, and THOMAS, Circuit Judges.

TASHIMA, Circuit Judge:

## I.

Heather Long Warrior, a member of the Crow Tribe, and Michael Boxx, a non-Indian, are social acquaintances. While at a party, after enjoying some alcoholic libations, they decided to go for a drive in Boxx's truck. While traveling on Ok–E–Beh Road, the truck rolled off the road, injuring Long Warrior. Ok–E–Beh Road, although it is on the Crow Reservation, is considered to be "non-Indian fee land." As a result, Long Warrior sued Boxx for her injuries in tribal court.

Shortly after Long Warrior filed her action in tribal court, Boxx filed a motion to dismiss that action. Before the tribal court decided his motion to dismiss, however, Boxx also filed this action in the federal district court to enjoin Long Warrior from pursuing the tribal court action. In the federal action, Boxx filed a motion for summary judgment and, in turn, Long Warrior moved to dismiss the federal action, contending that exhaustion in tribal court was required. While these motions were pending in district court, the tribal court granted Boxx's motion to dismiss for lack of jurisdiction. Consequently, without ruling on either party's motion, the district court dismissed Boxx's action as moot, without prejudice.

Long Warrior, however, appealed the tribal court's decision to the Tribal Court of Appeals. As a result of that appeal, Boxx filed a motion to amend the district court's order dismissing without prejudice, and asked for summary judgment because the appeal to the Tribal Court of Appeals required that he defend the underlying tort action, even though jurisdiction was

lacking. The district court agreed with Boxx and entered judgment in his favor. In so doing, it concluded that Boxx was not required to exhaust tribal remedies and that, under *Strate v. A–1 Contractors,* 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997), and *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), the tribal court lacked jurisdiction over the underlying action. Long Warrior appeals.

■ Long Warrior argues that under existing precedent, exhaustion is required. Although she concedes that there are exceptions to the exhaustion requirement, she contends that this case does not fall within any of them. She also argues that, whether or not exhaustion is required, the district court erred in holding that the tribal court lacked jurisdiction. She contends that Congress specifically delegated to the tribes the authority to adjudicate these kinds of actions and that even if it did not, the tribal court still had jurisdiction over Long Warrior's action under *Montana*'s two exceptions. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. We review the district court's grant of summary judgment de novo. *Balint v. Carson City,* 180 F.3d 1047, 1050 (9th Cir.1999) (en banc).

## II.

■ In *Montana,* the Supreme Court held that where there is no intervention of treaty or federal law, a tribe has only limited civil regulatory authority, *i.e.,* leg-islative jurisdiction, over non-tribal members for activities on reservation land alienated to non-Indians (non-Indian fee land). *Montana,* 450 U.S. at 563–65, 101 S.Ct. 1245. This limited civil regulatory authority includes the right to

> regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Id.* at 565–66, 101 S.Ct. 1245 (internal citations omitted).[1]

## A.

■ Long Warrior argues that two federal statutes authorize the Crow Tribe to entertain civil suits involving highway accidents caused in part by alcohol consumption. The two statutes, 25 U.S.C. § 2401 and 18 U.S.C. § 1161, however, cannot bear that weight. First, § 2401 is not a delegation of authority, but a list of congressional findings supporting Congress' enactment of laws unrelated to the tribes' authority to regulate or adjudicate alcohol-related highway accidents. *See generally* 25 U.S.C. §§ 24112455.[2] Therefore, Con-

---

1. Although *Montana* only spoke of regulatory authority, *Strate* made it clear that a tribe's adjudicatory jurisdiction could not exceed its legislative one. *Strate,* 520 U.S. at 453, 117 S.Ct. 1404; *Burlington N.R.R. Co. v. Red Wolf,* 196 F.3d 1059, 1062 (9th Cir.), *cert. denied,* 529 U.S. 1110, 120 S.Ct. 1964, 146 L.Ed.2d 795 (2000).

2. As stated in 25 U.S.C. § 2402, the statement of purpose, §§ 2411 through 2455, was not intended to grant Indians any authority over alcohol-related accidents. Rather, the purpose of the statute was to:

> (1) authorize[ ] and develop a comprehensive, coordinated attack upon the illegal narcotics traffic in Indian country and the deleterious impact of alcohol and substance abuse upon Indian tribes and their members,

gress did not expressly authorize jurisdiction in tribal courts for personal injury actions involving alcohol. 18 U.S.C. § 1161 fares no better. Contrary to Long Warrior's argument, § 1161 does not vest tribal courts with jurisdiction over alcohol-related personal injury lawsuits. Rather, as explained by the Supreme Court in *United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975), § 1161 merely allows "Indian tribes, with the approval of the Secretary of the Interior, to regulate the *introduction* of liquor into Indian country, so long as state law was not violated." *Id.* at 547, 95 S.Ct. 710 (emphasis added). Therefore, neither of the sections relied on by Long Warrior confers upon tribal courts the right to adjudicate the suit at hand.

**B.**

 Long Warrior also claims that the tribal court has jurisdiction over this action because the Crow Tribe retained a gatekeeping right over Ok–E–Beh Road. This argument is meritless. A right-of-way over Ok–E–Beh Road, where the accident took place, was granted to the United States National Park Service "for road purposes in perpetuity, including, without limitation by reason of enumeration, the right to construct, maintain and use road, road turn offs, scenic view areas and parking areas." A tribe cannot assert a gatekeeping right if, as here, it has lost the "landowner's right to occupy and exclude." *Strate,* 520 U.S. at 456, 117 S.Ct. 1404. A plain reading of this right-of-way leads to the inescapable conclusion that the Crow Tribe " 'expressly reserved no right to ex-

ercise dominion or control over the right-of-way.' " *County of Lewis v. Allen,* 163 F.3d 509, 514 (9th Cir.1998) (quoting *Strate,* 520 U.S. at 456, 117 S.Ct. 1404). Therefore, "[t]he tribe[ ] 'retained no gatekeeping right.' " *Id.* (quoting *Strate,* 520 U.S. at 456, 117 S.Ct. 1404). On the contrary, the tribe reserved only "the right to graze such portions of the lands covered by said right-of-way as are not then developed for said road purposes, together with the right to construct and use thereon access roads to owners' remaining lands at points mutually acceptable...." Moreover, whether or not section 3–2–203 of the Crow Tribal Code purports to confer jurisdiction on the Tribe for activities on Ok–E–Beh Road, "[h]aving ceded that right, the tribe cannot now assert tribal jurisdiction over non-Indian[s] ... for activities arising directly out of the arrangement." *Id.; cf. South Dakota v. Bourland,* 508 U.S. 679, 689, 113 S.Ct. 2309, 124 L.Ed.2d 606 (1993) (regarding reservation land acquired by the United States for operation of a dam and reservoir, tribe's loss of "right of absolute and exclusive use and occupation ... implies the loss of regulatory jurisdiction over the use of the land by others").

**C.**

 Having failed to point to any treaty or statute authorizing the Crow Tribe "to entertain highway-accident tort suits of the kind [Long Warrior] commenced against [Boxx,] ... [Long Warrior] must show that [her] tribal-court action against [a] nonmember[ ] qualifies under one of *Montana*'s two exceptions." *Strate,* 520 U.S.

(2) provide needed direction and guidance to those Federal agencies responsible for Indian programs to identify and focus existing programs and resources, including those made available by this chapter, upon this problem,
(3) provide authority and opportunities for Indian tribes to develop and implement a coordinated program for the prevention

and treatment of alcohol and substance abuse at the local level, and
(4) to modify or supplement existing programs and authorities in the areas of education, family and social services, law enforcement and judicial services, and health services to further the purposes of this chapter.
25 U.S.C. § 2402.

at 456, 117 S.Ct. 1404. Under the first *Montana* exception, a tribe may regulate, and thus adjudicate, "activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Montana*, 450 U.S. at 565. Long Warrior contends that because her relationship with Boxx is consensual, albeit socially consensual, jurisdiction here is proper. We reject this argument.

It is true that Long Warrior's relationship with Boxx was consensual. But that is only half of the equation. Under *Montana*, the relationship must be both consensual *and* entered into "through commercial dealings, contracts, leases, or other arrangements." *Id.* In interpreting that language, courts have inferred that "qualifying relationships" only arise from some form of commercial transaction. The Supreme Court reasoned that:

> *Montana*'s list of cases fitting within the first exception, *see* 450 U.S., at 565–566, 101 S.Ct. 1245, indicates the type of activities the Court had in mind: *Williams v. Lee*, 358 U.S. 217, 223, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) (declaring tribal jurisdiction exclusive over lawsuit arising out of on-reservation sales transaction between nonmember plaintiff and member defendants); *Morris v. Hitchcock*, 194 U.S. 384, 24 S.Ct. 712, 48 L.Ed. 1030 (1904) (upholding tribal permit tax on nonmember-owned livestock within boundaries of the Chickasaw Nation); *Buster v. Wright*, 135 F. 947, 950 (C.A.8 1905) (upholding Tribe's permit tax on nonmembers for the privilege of

conducting business within Tribe's borders; court characterized as "inherent" the Tribe's "authority ... to prescribe the terms upon which noncitizens may transact business within its borders"); [*Washington v. Confederated Tribes of the*] *Colville* [*Indian Reservation*], 447 U.S. [134], 152154, 100 S.Ct. 2069, 65 L.Ed.2d 10 [ (1980) ] (tribal authority to tax on-reservation cigarette sales to nonmembers "is a fundamental attribute of sovereignty which the tribes retain unless divested of it by federal law or necessary implication of their dependent status").

*Strate*, 520 U.S. at 457, 117 S.Ct. 1404; *cf. Allstate Indem. Co. v. Stump*, 191 F.3d 1071, 1076 (9th Cir.1999) ("[I]t appears to us that the dispute arises not from the parties' contractual relationship, as the first *Montana* exception requires, but from alleged conduct governed by [state law].").

We reaffirm this principle today. Under *Montana*'s first exception, a relationship is of the qualifying kind only if it is both consensual and entered into through commercial dealing, contracts, leases, or other arrangements. To the extent that the relationship cannot be neatly categorized as one entered through commercial dealing, contracts, or leases, but is instead characterized as one entered through "other arrangements," we conclude that such arrangements also must be of a commercial nature. Hence, although we do not provide an exhaustive list of qualifying relationships under *Montana*'s first exception, we hold that the relationship at issue in this case, which is a personal one, is not of the qualifying kind.[3]

---

**3.** Long Warrior's reliance on *Sanders v. Robinson*, 864 F.2d 630 (9th Cir.1988), is misplaced. First, *Sanders* is a domestic relations case, and domestic relations has long been an area excepted from federal jurisdiction. *See Ankenbrandt v. Richards*, 504 U.S. 689, 693, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). Second *Sander's* holding that tribal courts had

jurisdiction over dissolution proceedings of that marriage was based on the fact that the family unit (the couple and their children) resided on the reservation and that all three children were members of the tribe. Thus, *Sanders* has no application to the casual relationship in the case at bench.

## D.

■ Long Warrior also contends that *Montana*'s second exception is implicated in this case. Namely, she contends that the conduct she seeks relief for "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe" because alcohol-related accidents are of great concern to the Crow Tribe, as evidenced by Congress's enactment of 25 U.S.C. § 2401. *See Montana*, 450 U.S. at 565, 101 S.Ct. 1245. But this is not what is at issue here. The action in tribal court does not seek to enforce or control the distribution or consumption of alcohol on the reservation. Rather, it seeks damages for negligence. As the Supreme Court has held: "Undoubtedly, those who drive carelessly on a public highway running through a reservation endanger all in the vicinity, and surely jeopardize the safety of tribal members. But if *Montana*'s second exception requires no more, the exception would severely shrink the rule." *Strate*, 520 U.S. at 457–58, 117 S.Ct. 1404.[4]

Even assuming that the presence of alcohol distinguishes this case from precedent, the second exception cannot possibly confer jurisdiction on the tribal courts here. Although framed in broad terms, *Montana*'s second exception is narrowly construed. *County of Lewis*, 163 F.3d at 515. The "cases cited in *Montana* indicate the character of the tribal interest the Court envisioned." *Strate*, 520 U.S. at 458, 117 S.Ct. 1404. In analyzing those cases, the Court concluded that in order

for a case to fall within the second exception, either "regulatory [ ]or adjudicatory authority over the . . . highway accident at issue is needed to preserve the right of reservation Indians to make their own laws and be ruled by them." *Id.* at 459, 117 S.Ct. 1404 (internal quotation marks omitted). *Strate*, then, puts the exception in its proper context:

> Read in isolation, the *Montana* rule's second exception can be misperceived. Key to its proper application, however, is the Court's preface: "Indian tribes retain their inherent power [to punish tribal offenders,] to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members. . . . But [a tribe's inherent power does not reach] beyond what is necessary to protect tribal self-government or to control internal relations."

*County of Lewis*, 163 F.3d at 515 (quoting *Strate*, 520 U.S. at 459, 117 S.Ct. 1404).

Here, the underlying tort action is certainly not needed to preserve such rights. Even assuming that the Tribe possesses some regulatory and adjudicatory power over the sale and consumption of alcohol, the Tribe is not prevented in any way from exercising such authority by being denied the right to adjudicate this garden variety automobile accident. If we were to find jurisdiction here, "the exception would swallow the rule because virtually every act that occurs on the reservation could be argued to have some . . . welfare ramification to the tribe." *Id.* We hold, therefore,

---

4. Nor is Long Warrior's status as a member of the Crow Tribe enough to confer jurisdiction on the tribal court. As explained in *Wilson v. Marchington*, 127 F.3d 805 (9th Cir.1997), the tribal court plaintiff's status as a tribal member alone cannot satisfy the second exception. *Id.* at 815. Rather, "[t]o invoke the second *Montana* exception, the im-

pact must be 'demonstrably serious and must imperil the political integrity, the economic security, or the health and welfare of the Tribe.'" *Id.* (quoting *Brendale v. Confederated Tribes & Bands of the Yakima Indian Nation*, 492 U.S. 408, 431, 109 S.Ct. 2994, 106 L.Ed.2d 343 (1989)).

that the tribal court lacks jurisdiction over Long Warrior's personal injury action.

### E.

 Because we conclude that the tribal court lacks jurisdiction over this claim, exhaustion is not required. *Nevada v. Hicks,* —— U.S. ——, ——, 121 S.Ct. 2304, 2315, 150 L.Ed.2d 398 (2001) ("Since it is clear ... that tribal courts lack jurisdiction ..., adherence to the tribal exhaustion requirement in such cases 'would serve no purpose other than delay,' and is therefore unnecessary."); *Burlington Northern,* 196 F.3d at 1065–66 ("exhaustion is not required when 'tribal court jurisdiction does not exist under *Montana* and *Strate,*' and remand would only delay a final judgment").

### III.

In conclusion, neither the federal statutes relied on by Long Warrior nor *Montana*'s exceptions provide for tribal court jurisdiction in this case. As the Court stated in *Strate,* Long Warrior may pursue her case against Boxx

> in the state forum open to all who sustain injuries on [Montana's] highway. Opening the Tribal Court for her optional use is not necessary to protect tribal self-government; and requiring [Boxx] to defend against this commonplace ... highway accident claim in an unfamiliar court is not crucial to "the political integrity, the economic security, or the health and welfare of the [Crow Tribe]."

*Strate,* 520 U.S. at 459, 117 S.Ct. 1404 (quoting *Montana,* 450 U.S. at 566, 101 S.Ct. 1245) (footnotes omitted).

The judgment of the district court is **AFFIRMED.**