GOULD, Circuit Judge,
with whom RYMER and CALLAHAN, Circuit Judges, join, dissenting:
1 would hold that the Tribal Court of the Confederated Salish and Kootenai Tribes did not have jurisdiction to adjudicate a claim involving Smith, a nonmember of the tribe. It is necessary to part company with the majority, for it parts company with compulsory Supreme Court guidance.
In Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), the United States Supreme Court established the fundamental framework for considering whether a tribal court has jurisdiction over a claim involving any nonmember of the tribe. Under the rule of Montana, federal courts must presume that tribal courts lack jurisdiction over lawsuits involving nonmembers unless one of two exceptions specified by the Supreme Court applies:
A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.
id. at 565-66, 101 S.Ct. 1245 (citations omitted). Because neither exception applies here, the Tribal Court of the Confederated Salish and Kootenai Tribes lacks jurisdiction to consider a claim involving Smith, a nonmember. In reaching a contrary conclusion, the majority errs and puts our circuit into conflict with recent Supreme Court jurisprudence on the jurisdiction of tribal courts over claims involving tribal nonmembers.
I
The majority errs in its holding that the operation of the Montana framework depends on whether the nonmember party is a plaintiff or defendant. In particular, the majority concludes that the case of Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), provides for tribal jurisdiction whenever a nonmember plaintiff brings suit in tribal court against a member defendant. This reasoning cannot be reconciled with the holding of Montana and the fundamental change it wrought in determining whether tribal courts have jurisdiction over all claims involving nonmembers. The plain language of Montana indicates that its framework applies to legal actions involving “nonmembers” without limitation, and this analysis *1142 has been repeated in subsequent Supreme Court cases. Moreover, in illustrating the application of the Montana framework, the Court has used Williams to illustrate examples of the Montana framework, indicating that nonmember plaintiffs, as well as nonmember defendants, fall within that doctrine. Indeed, the Supreme Court has stated that in Strate v. A-1 Contractors, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997), it applied the Montana framework “without distinguishing between nonmember plaintiffs and nonmember defendants.” Nevada v. Hicks, 533 U.S. 353, 358 n. 2, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001). Thus, in claiming that Williams compels an exception here to the Montana framework, the majority ignores not only the fundamental shift in tribal court jurisdiction that the Court implemented in Montana, but also the clear, unqualified language of recent Supreme Court cases considering the jurisdiction of tribal courts.
Whatever tension there may be between the language of Williams and the framework that the Supreme Court set forth in Montana, the Court itself has indicated that Williams is to be understood and interpreted as a part of the Montana. framework, rather than a doctrine entirely separate from it. See Montana, 450 U.S. at 565-66, 101 S.Ct. 1245 (citing Williams as an example of both exceptions).
II
A
The majority misapplies the holding of Montana in concluding that this case falls within the first Montana exception, governing “nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases or other arrangements.” 450 U.S. at 565, 101 S.Ct. 1245. Smith’s filing of the cross-claim does not establish the relationship necessary to invoke the first exception because a party seeking to invoke tribal court jurisdiction must point not to a “consensual” court proceeding, but to “another private consensual relationship.” Hicks, 533 U.S. at 359 n. 3, 121 S.Ct. 2304. The cases that the Supreme Court has cited as illustrative of the first Montana exception reinforce the conclusion that the filing of a lawsuit, as Smith did in this case, is not the type of consensual, economic relationship that falls within the first Montana exception. See, e.g,, Washington v. Confederated Tribes of the Colville Indian Reservation, 447 U.S. 134, 153, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) (holding: that a tribe may tax members entering the reservation to engage in economic activity); Morris v. Hitchcock, 194 U.S. 384, 393, 24 S.Ct. 712, 48 L.Ed. 1030 (1904) (allowing a tribal permit tax on nonmember-owned livestock within the reservation); Buster v. Wright, 135 F. 947, 950 (8th Cir.1905) (allowing a tribal permit tax on nonmembers seeking to conduct business within the reservation).
The majority suggests that the filing of a claim by a nonmember plaintiff in Williams was cited by the Supreme Court “as an example of ‘private individuals who voluntarily submitted themselves to tribal regulatory jurisdiction by the arrangements that they ... entered into.’ ” Majority opinion, ante at 1138. But the filing of a civil claim by a nonmember plaintiff was not given by the Supreme Court as an example of the first exception. More accurately, the Supreme Court in Hicks cited Williams as an example of the type of “private commercial actors” who enter into “consensual relationships,” which may permit tribal jurisdiction under the first exception of Montana,, Hicks, 533 U.S. at 372, 121 S.Ct. 2304. In Williams, the plaintiff owned a store on the reservation, sold goods to the tribal member defendants on credit, and sued, in state court, to collect the debt. 358 U.S. at 217-18, 79 *1143 S.Ct. 269. It was in these circumstances that the Supreme Court explained that the plaintiff “was on the Reservation and the transaction with an Indian took place there.” Id. at 223, 79 S.Ct. 269. Smith does not have any of the attributes of a “private commercial actor” and the filing of a cross-claim is not a “private consensual relationship” as the Supreme Court has interpreted the first exception. Hicks, 533 C.S. at 359 n. 3, 121 S.Ct. 2304; Boxx v. Long Warrior, 265 F.3d 771, 776 (9th Cir. 2001) (“Under Montana’s first exception, a relationship is of the qualifying kind only if it is both consensual and entered into through commercial dealing, contracts, leases, or other arrangements.”).
Although defendant Salish Kootenai College argues that the underlying relationship between the college and its students, including Smith, satisfies the requirement that there be a “consensual relationship” between the parties, the Supreme Court has rejected the theory that a relationship so attenuated from the underlying tort claim may provide the basis for tribal court jurisdiction. Strate, 520 U.S. at 457, 117 S.Ct. 1404; see also Atkinson Trading Co. v. Shirley, 532 U.S. 645, 656, 121 S.Ct. 1825, 149 L.Ed.2d 889 (2001). Accordingly, there is this point on which I agree with the majority: “Any contractual relationship Smith had with SKC as a result of his student status is too remote from his cause of action to serve as the basis for the Tribes’ civil jurisdiction.” Majority opinion, ante at 1136.
B
The second Montana exception is also inapplicable here. The assertion of tribal court jurisdiction over a claim brought by a nonmember plaintiff against a member defendant does not concern “activity that directly affects the tribe’s political integrity, economic security, health, or welfare.” Strate, 520 U.S. at 446, 117 S.Ct. 1404. More importantly, the Supreme Court has expressly rejected the argument that allowing nonmembers access to tribal court for civil litigation purposes falls within the second Montana exception. Id. at 459, 117 S.Ct. 1404 (“Opening the Tribal Court for [a nonmember’s] optional use is not necessary to protect tribal self-government....”). Not only is this Supreme Court language binding on us here, but, as with the first Montana exception, the cases the Court has used in illustrating the second Montana exception are far afield from the tort claims that Smith sought to have adjudicated in tribal court. See Boxx, 265 F.3d at 777 (“Even assuming that the Tribe possesses some regulatory and adjudicatory power over the sale and consumption of alcohol, the Tribe is not prevented in any way from exercising such authority by being denied the right to adjudicate this garden variety automobile accident.”)
The Supreme Court has noted that “key” to the proper application of the second exception is its preface: “Indian tribes retain them inherent power [to punish tribal offenders,] to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members.... But [a tribe’s inherent power does not reach] beyond what is necessary to protect tribal self-government or to control internal relations.” Strate, 520 U.S. at 459, 117 S.Ct. 1404 (quoting Montana, 450 U.S. at 564, 101 S.Ct. 1245) (alterations in original). Examples of circumstances that satisfy the second exception include adoption proceedings, Fisher v. Dist. Ct. of Sixteenth Judicial Dist. of Mont., 424 U.S. 382, 387, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976), and a “claim by a non-Indian merchant seeking payment from tribe members for goods bought on credit at an on-reservation store,” Strate, 520 U.S. at 458, 117 S.Ct. 1404 (describing the facts of Williams, 358 U.S. at 220, 79 S.Ct. 269). Smith may *1144 pursue his ease in the state forum without threatening the political integrity or sovereignty of the tribe. See Strate, 520 U.S. at 459, 117 S.Ct. 1404. The majority is incorrect in suggesting that Smith might fit within the second exception given by Montana,
III
The majority also errs in holding that a party may waive lack of tribal court jurisdiction, much as a litigant in any court may waive lack of personal jurisdiction. The Supreme Court has rejected this reasoning, and has held that the “limitation on jurisdiction over nonmembers pertains to subject-matter, rather than merely personal, jurisdiction, since it turns upon whether the actions at issue in the litigation are regulable by the tribe.” Hicks, 533 U.S. at 367 n. 8, 121 S.Ct. 2304. It bears repeating that the Supreme Court’s statement in footnote 8 of the majority opinion of Hicks, penned by Justice Scalia and joined by five other Justices, that Strate’s “limitation on jurisdiction over nonmembers” is a matter of “subject-matter, rather than personal, jurisdiction” is a holding of the Court, as the majority here indulges in “imaginative jurisprudence” with the effect to avoid the implications of this Supreme Court language and instead to chart a new doctrinal course. Tribal courts, however, are courts of limited, not general, subject-matter jurisdiction, and one area in which tribal courts presumptively lack jurisdiction is over claims involving nonmembers of the tribe, id. at 366-68, 121 S.Ct. 2304. The majority incorrectly adopts an unrestricted balancing of interests by analogy to the due process standards applicable to personal jurisdiction. But I cannot avoid concluding that here the majority sails on its own course through uncharted waters, rather than in the secure channels of Montana, Strate., and Hicks that have been marked by the Supreme Court.
There is a potential for injustice in any system that allows a party to bring a claim, lose on the merits, and then assert that the court lacked jurisdiction to adjudicate the matter at all, and doubtless this concern may motivate the majority. The problem of potential injustice, however, is not unique to the tribal court setting, but rather is inherent in any system that contains courts of limited jurisdiction, including the federal courts. There is a potential injustice in any case where we vacate a judgment and dismiss for lack of jurisdiction, but it is a necessary consequence of our law of jurisdiction and the concept of limited governmental power. Lack of subject-matter jurisdiction, whether in a federal court or in a tribal court, renders a judgment null and void, and a party may not escape from this long-established doctrine by claiming that a consent can confer jurisdiction on a court. Thus, it is surprising that the majority places such a dominant weight on the assent of Smith, rather than upon the required substantive analysis of the Montana exceptions.
IV
In the broader context of tribal court jurisdiction, voluntary attendance at a community college cannot be considered a consent to tribal court jurisdiction on tort claims arising out of that relationship. The majority, moreover, cannot point to any way in which adjudicating this tort claim in tribal court is “ ‘necessary to protect tribal self-government or to control internal relations.’ ” Id. at 359, 121 S.Ct. 2304 (quoting Montana, 450 U.S. at 564, 101 S.Ct. 1245) (emphasis omitted). It would be wrong to think that tribal jurisdiction over nonmembers on tort claims is a necessary incident of tribal sovereignty. Neither of the Montana. exceptions, as construed by binding Supreme Court precedent, applies to the situation here and, therefore, the exercise of tribal jurisdiction *1145 over nonmernber Smith wa~ not correct. I respectfully dissent, believing that we are bound by Montana and its progeny to reverse the judgment of the district court.