YELLOWSTONE COUNTY, a political subdivision of the State of Montana, Plaintiff–Appellee,

v.

Carl PEASE, Defendant–Appellant.

No. 95–36026.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 1996.

Decided Sept. 11, 1996.

D. Michael Eakin, Montana Legal Services, Billings, MT, for defendant-appellant.

Harley R. Harris, Assistant Attorney General, Helena, MT, for plaintiff-appellee.

Dale T. White, Fredericks, Pelcyger, Hester & White, Boulder, CO, for amicus Crow Tribe.

Before: WRIGHT, BEEZER and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether an Indian tribal court has subject matter jurisdiction to entertain an action challenging a county's right to impose property taxes on reservation land held in fee by a member of the tribe.

I

Carl Pease, a member of the Crow Tribe of Indians ("the Tribe") in Montana, appeals from the district court's summary judgment for Yellowstone County (the "County") in the County's action seeking a declaratory judg-

ment that the Crow Tribal Court exceeded its jurisdiction by ruling that Pease was not required to pay property taxes imposed by the County.

■ Pease owns fee title to real property located within the boundaries of the Crow Reservation. The property was allotted and patented in fee to Pease's father under the Crow Allotment Act of 1920, 41 Stat. 751.[1]

Pease has failed to pay his state property taxes from 1987 to the present. In July 1991, he filed an action in Crow Tribal Court seeking to enjoin Yellowstone County from imposing state property taxes on his land. The parties agreed to stay the tribal court action pending the Supreme Court's decision in *County of Yakima v. Confederated Tribes and Bands of Yakima Indian Nation*, 502 U.S. 251, 112 S.Ct. 683, 116 L.Ed.2d 687 (1992) (holding that states could impose an ad valorem property tax on fee land that had been allotted under the General Allotment Act). After the Court decided *Yakima*, the tribal court lifted the stay. The parties stipulated to the facts and submitted cross motions for summary judgment. The tribal court concluded that Montana's Constitution bars the County from imposing taxes on Pease's land, and enjoined the County from issuing a tax deed or tax sale certificate. The County appealed to the Crow Court of Appeal, which held that the Crow tribal courts had jurisdiction of the case and that the County could not tax Pease's land because it was allotted under the Crow Allotment Act, not the General Allotment Act.

The County brought an action in federal district court seeking a declaration that the tribal court lacked jurisdiction over Pease's case and that the County could tax Pease's land. The County later withdrew its request for a declaration that the County could tax Pease's land.[2] Relying on *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), the district court granted the County's motion for summary judgment,

holding that tribal courts do not have jurisdiction over the subject matter of the case. *Yellowstone County v. Pease*, No. CV 94–131–BLG–JDS (D.Mont. July 26, 1995) (memorandum and order). The district court granted the County's unopposed motion for entry of final judgment, and entered judgment on September 13, 1995, thus vacating the tribal court decisions. Pease timely filed a notice of appeal.

## II

As a threshold matter, we reject Pease's contentions that the district court (1) should have dismissed the County's action for failure to exhaust tribal remedies, and (2) abused its discretion in failing to conclude that the Crow Tribe is an indispensable party.

### A

In *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), the Supreme Court held that a party must exhaust tribal court remedies before a federal district court may entertain a challenge to tribal jurisdiction. *Id.* at 857, 105 S.Ct. at 2454; *see Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 19, 107 S.Ct. 971, 978, 94 L.Ed.2d 10 (1987) ("*National Farmers Union* requires that the issue of jurisdiction be resolved by the Tribal Courts in the first instance"). The Supreme Court concluded that the congressional policy of supporting tribal self-government "favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge." *National Farmers Union*, 471 U.S. at 856, 105 S.Ct. at 2454 (footnote omitted).

■ Although Pease concedes that "the [C]ounty exhausted tribal remedies," he contends that the County's failure to challenge tribal jurisdiction before filing its tribal appellate reply brief deprived the tribal court

---

1. "Patented in fee" refers to Indian land held in fee by an individual Indian, as opposed to land held in trust for the tribe by the federal government. *Felix S. Cohen's Handbook of Federal Indian Law*, 605–19 (Rennard Strickland et al. eds., 1982).

2. The County "believes Pease's defenses to his tax liability are properly resolved in state administrative and judicial proceedings." Accordingly, the district court did not reach the merits of the underlying tax issue.

of a "full opportunity" to consider the jurisdictional issue and to develop a "full record." *See id.* at 856–57, 105 S.Ct. at 2454. The district court rejected Pease's contention, and concluded that the County exhausted its tribal remedies because "the Crow Court of Appeals ruled on its jurisdiction."

■ Pease's contention lacks merit. As this court has stated: "Once all tribal remedies are exhausted and the tribal courts finally decide that tribal jurisdiction exists, then the district court can decide the question of tribal jurisdiction." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221, 1227 (9th Cir.1989) (citing *National Farmers Union,* 471 U.S. at 852, 105 S.Ct. at 2451–52). Here, the tribal court clearly had a "full opportunity" to consider the jurisdictional issue because the Crow Court of Appeals actually and finally decided that tribal jurisdiction exists. Accordingly, the district court did not err in concluding that the County exhausted tribal court remedies.

#### B

We are also unpersuaded by Pease's contention that the district court abused its discretion by concluding that the "Crow Tribe is not an indispensable party, and [that] the Tribe would be bound by a judgment of this Court."

■ Under Federal Rule of Civil Procedure 19, a non-party is "indispensable" to an action if (1) the non-party is "necessary" under Rule 19(a); (2) the non-party cannot be joined (due to sovereign immunity, for example); and (3) the non-party's absence would mandate dismissal according to a weighing of the factors outlined in Rule 19(b). Because we conclude that the Tribe is not a necessary party, we need not advance to steps two and three.

■ This court undertakes a two-pronged analysis to determine whether a non-party is necessary under Rule 19(a).[3] If a non-party satisfies either of the two prongs, the non-party is necessary. First, we determine whether "complete relief" is possible among those already parties to the suit. *Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir.1990); *see also Confederated Tribes of the Chehalis Indian Reservation v. Lujan,* 928 F.2d 1496, 1500, 1501 (9th Cir.1991) (O'Scannlain, J., concurring in part and dissenting in part) ("The relevant question for Rule 19(a) must be whether success in the litigation can afford the plaintiffs the relief *for which they have prayed.*"). Second, we decide whether the non-party has a *"legally protected interest* in the suit." *Makah,* 910 F.2d at 558.

■ Pease contends that the County should have sued the Tribe or the tribal court because "it is the actions of the tribal court that the County seeks to void." Pease maintains that the County cannot obtain complete relief without joining the Tribe because the "Crow Tribe could continue to assert its jurisdiction and enforce the judgment of its court if it is not made a party to the action." Pease also contends that the Tribe has a legally protected interest in its "right to maintain a court system that can determine the rights of a tribal member and Yellowstone County to real property on the reservation."

Pease's contention that the district court's judgment is not binding on the Tribe is without merit for several reasons. First, the County's challenge to the tribal court's jurisdiction raises a federal question that is clearly within the jurisdiction of a federal district court. *FMC v. Shoshone–Bannock Tribes,* 905 F.2d 1311, 1314 (9th Cir.1990) (citations omitted) ("[F]ederal courts are the final arbi-

---

**3.** Rule 19(a) describes persons to be joined if feasible:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to

the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. Fed.R.Civ.P. 19(a).

ters of federal law, and the question of tribal court jurisdiction is a federal question."), *cert. denied,* 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991); *see National Farmers Union,* 471 U.S. at 852, 105 S.Ct. at 2451–52. Second, it is not necessary to join the tribal court as a party to Pease's suit for the simple reason that tribal judges, like state judges, are expected to comply with binding pronouncements of the federal courts. *See, e.g., In re Justices of Supreme Court of Puerto Rico,* 695 F.2d 17, 23 (1st Cir.1982) (citations omitted) ("it is ordinarily presumed that judges will comply with a declaration of a statute's unconstitutionality without further compulsion"); *James v. Jones,* 148 F.R.D. 196, 203 (W.D.Ky.1993) (holding that state judges were not necessary parties to action challenging constitutionality of state laws relating to detention of juveniles). Accordingly, the district court provided complete relief to the County for the purposes of Rule 19(a).

Pease's contention that the tribal court has a legally protected interest in maintaining a court system that adjudicates property rights is also without merit. First, this case is not about the Tribe's right to tax reservation lands; rather, this action arose from Pease's claim that the *County,* a political subdivision of the State of Montana, is powerless to tax his fee-patented property. Second, concluding that courts are necessary parties under Rule 19(a) whenever their jurisdiction is challenged would lead to absurd results. Clearly, the County can seek to have the judgment obtained by Pease vacated on jurisdictional grounds without naming the tribal court as a defendant. Third, unlike other cases where courts have concluded that tribes are necessary parties under Rule 19(a), here the Tribe cannot demonstrate that it is a party to a relevant commercial agreement, lease, trust, or treaty with one of the parties to the lawsuit.[4] Thus, the tribal court does not

have a legally protected interest that would be impaired or impeded by the County's suit.

Accordingly, the district court did not err in holding that the Crow Tribe is not an indispensable party.

### III

Relying upon *Montana,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493, the district court concluded that this action "involves an external relationship between the Tribe and nonmembers of the Tribe, the County. The Tribe's sovereignty concerning external relationships has been divested, and the Tribe is not free to determine independently the County's authority to tax fee patent land on the reservation." The district court further concluded that the Tribe could not assert jurisdiction under either of the two exceptions outlined in *Montana.*

In *Montana,* the Supreme Court considered the power of an Indian tribe to regulate hunting and fishing by non-Indians on lands located within the Crow Reservation and owned in fee simple by non-Indians. The Court provided the following discussion of tribal sovereignty:

> [T]he Court [in *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978)] was careful to note that, through their original incorporation into the United States as well as through specific treaties and statutes, the Indian tribes have lost many of the attributes of sovereignty. The [*Wheeler*] Court distinguished between those inherent powers retained by the tribe and those divested:
>
> > The areas in which such implicit divestiture of sovereignty has been held to have occurred are those involving *the*

4. *See, e.g., Quileute Indian Tribe v. Babbitt,* 18 F.3d 1456, 1459–60 (9th Cir.1994) (governing tribe of reservation is necessary and indispensable party to suit challenging agency decision that fractional interests in trust property escheated to governing tribe under federal statute); *Confederated Tribes,* 928 F.2d at 1498 (Quinault Indian Nation is necessary and indispensable party to suit challenging the United States' continuing recognition of Quinault Indian Nation as the sole governing authority for the Quinault Indian Res-

ervation); *Makah,* 910 F.2d at 558 (absent tribes holding treaty right to salmon are necessary parties to Makah's challenge to Department of Interior's inter-tribal fish allocation decision); *McClendon v. United States,* 885 F.2d 627, 633 (9th Cir.1989) (Indian tribe is necessary party to action seeking to enforce lease agreement signed by tribe); *see also Enterprise Mgt. Consultants, Inc. v. United States,* 883 F.2d 890, 893 (10th Cir.1989) (Indian tribe is necessary party to action seeking to validate contract with tribe).

*relations between an Indian tribe and nonmembers of the tribe. . . .*

These limitations rest on the fact that the dependent status of Indian tribes within our territorial jurisdiction is necessarily inconsistent with their freedom independently *to determine their external relations.* But the powers of self-government, including the power to prescribe and enforce internal criminal laws, are of a different type. They involve *only the relations among members of a tribe.* Thus, they are not such powers as would necessarily be lost by virtue of a tribe's dependent status.

*Id.* at 563–64, 101 S.Ct. at 1257 (citations and internal quotation marks omitted) (emphasis in original). The Court concluded:

Thus, in addition to the power to punish tribal offenders, the Indian tribes retain their inherent power to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members. But exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without *express congressional delegation.*

*Id.* at 564, 101 S.Ct. at 1258 (citations omitted) (emphasis added); *accord Brendale v. Confederated Tribes and Bands of Yakima Indian Nation,* 492 U.S. 408, 425–28, 109 S.Ct. 2994, 3006, 106 L.Ed.2d 343 (1989) (plurality opinion); *see also South Dakota v. Bourland,* 508 U.S. 679, 695 n. 15, 113 S.Ct. 2309, 2320 n. 15, 124 L.Ed.2d 606 (1993) (quoting *Montana,* 450 U.S. at 564, 101 S.Ct. at 1258) ("[A]fter *Montana,* tribal sovereignty over nonmembers 'cannot survive without express congressional delegation.' ").

The *Montana* Court then went on to discuss two exceptions to the "general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." 450 U.S. at 565, 101 S.Ct. at 1258. The first exception recognizes that a tribe "may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members,

through commercial dealing, contracts, leases, or other arrangements." *Id.* (citations omitted). The second exception acknowledges a "tribe's inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* at 566, 101 S.Ct. at 1258 (citations omitted).

## A

Here, the district court rejected Pease's contention that the Tribe has jurisdiction under the first *Montana* exception on the ground that a consensual commercial relationship arose from the Crow Allotment Act of 1920 (which gave the state of Montana sections 16 and 36 of every range and township on the reservation). The district court concluded that the Crow Allotment Act "is a legislative directive from Congress and does not equate to a consensual commercial relationship."

The district court also rejected Pease's assertion that tribal jurisdiction exists under the second *Montana* exception on the ground that the County's taxing activity affects the "political integrity, the economic security, or the health or welfare of the tribe." The court concluded that "while the state taxes affect the individual Pease, the taxes do not imperil the political integrity, economic security, or the health and welfare of the Crow Tribe."

## B

On appeal, Pease asserts that *Montana* does not apply to the County's action because *Montana* only imposed restriction on a tribe's jurisdiction over fee land owned by non-Indians. This contention is unpersuasive because the issue presented here is whether the tribal court may assert jurisdiction over a non-Indian party (the County), and this court has called *Montana* "the leading case on tribal civil jurisdiction over non-Indians." *Shoshone–Bannock Tribes,* 905 F.2d at 1314; *see also A–1 Contractors v. Strate,* 76 F.3d 930, 937–38 (8th Cir.1996) (en

banc) (rejecting notion that *Montana* and its progeny are limited to cases involving fee lands owned by non-Indians), *petition for cert. filed,* 64 U.S.L.W. 3795 (U.S. May 16, 1996) (No. 95–1872).[5]

### C

■ Next, Pease contends that the district court erred by failing to recognize that post-*Montana* cases (e.g., *National Farmers Union* and *Iowa Mutual*) demonstrate that tribal adjudicatory jurisdiction over non-Indians is much broader than the tribal regulatory authority at issue in *Montana.*[6] We are not persuaded.

Pease's assertion of a meaningful adjudicatory/regulatory distinction is unavailing, particularly in light of the Eighth Circuit's recent rejection of this argument in a persuasive en banc opinion. *A–1 Contractors,* 76 F.3d at 938 ("[T]he distinction does not appear explicitly, or even implicitly, anywhere in the case law. *Montana* and the cases following *Montana* ... never suggested that their reasoning is limited solely to regulatory matters."); *see also Brendale,* 492 U.S. at 430, 109 S.Ct. at 3008 ("The governing principle [of *Montana* ] is that the tribe has no authority itself, by way of tribal ordinance or actions in the tribal courts, to regulate the use of fee land.").

In *Iowa Mutual,* the Court stated that civil jurisdiction over the activities of non-Indians on reservation lands "presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." 480 U.S. at 18, 107 S.Ct. at 977. In *National Farmers Union,* the Court observed: "[T]he existence and extent of a tribal court's [civil subject-matter] jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as

embodied in treaties and elsewhere, and administrative or judicial decisions." 471 U.S. at 855–56, 105 S.Ct. at 2453–54.

In *A–1 Contractors,* the Eighth Circuit conceded that some of the language in *Iowa Mutual* and other cases "can be viewed in isolation to create a tension with *Montana,*" but the court concluded that

> a careful reading of the particular language of those cases ... indicates that they can and should be read together with *Montana* to establish one comprehensive and integrated rule: a valid tribal interest must be at issue before a tribal court may exercise civil jurisdiction over a non-Indian or nonmember, but once the tribal interest is established, a presumption arises that tribal courts have jurisdiction over the non-Indian or nonmember unless that jurisdiction is affirmatively limited by federal law.

*A–1 Contractors,* 76 F.3d at 938–39. The Eighth Circuit also stressed that *Iowa Mutual* and *National Farmers Union* are exhaustion cases that did not decide whether tribes had jurisdiction over nonmembers. *Id.* at 936; *see also Brendale,* 492 U.S. at 427 n. 10, 109 S.Ct. at 3006 n. 10.

We reject Pease's contention that *A–1 Contractors* is erroneous and in conflict with *Hinshaw v. Mahler,* 42 F.3d 1178 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 485, 130 L.Ed.2d 398 (1994). It is true that the Eighth Circuit declined to follow *Hinshaw* "[t]o the extent that *Hinshaw* supports the ... arguments that tribal courts have jurisdiction over a tort claim arising between two non-Indians on a highway running through an Indian reservation." *A–1 Contractors,* 76 F.3d at 939. However, *Hinshaw* is consistent with *Montana* and in no way supports the Tribe's adjudicatory/regulatory distinc-

---

**5.** In *A–1 Contractors,* the court overturned tribal court jurisdiction in a tort action between non-Indians because the court could not find a consensual agreement under the first *Montana* exception, and because the "desire to assert and protect excessively claimed sovereignty" was not a sufficient tribal interest under the second exception. 76 F.3d at 940.

**6.** The Crow Tribe also makes this argument in its amicus brief. The Tribe argues that the correct test, as set forth in *National Farmers Union,* "is whether tribal court jurisdiction has been divested by a specific treaty or statutory provision."

tion; moreover, *Hinshaw* is clearly distinguishable from the case before us.[7]

In *Hinshaw*, this court upheld tribal court jurisdiction in a tort action (wrongful death) brought by a tribal member whose son (a non-member of the tribe) was killed by an automobile driven by a non-Indian resident of the reservation. Citing *Montana*, the court first determined that the Tribes retained their inherent jurisdiction over the alleged tort; the court rested this determination on tribal ordinances and state court decisions, which explicitly provide that the Tribes have concurrent jurisdiction with the states over automobile accidents on public roads on the reservation. *Hinshaw*, 42 F.3d at 1180. Thus, the *Hinshaw* court implicitly concluded that state and tribal authorities coupled with the tortfeasor's specific contacts with the reservation created the requisite "tribal interest" under *Montana*. In contrast, the Crow Tribe does not enjoy specific authority to exercise jurisdiction over the propriety of a county's property tax scheme; in addition, unlike the non-Indian tortfeasor in *Hinshaw*, the non-Indian here neither resided on the reservation nor violated an enforceable tribal ordinance.

We also reject Pease's suggestion that *United States v. Plainbull*, 957 F.2d 724 (9th Cir.1992), compels the conclusion that tribal courts may exercise jurisdiction over government entities in a wide variety of actions. In *Plainbull*, the United States brought suit (in its own right and on behalf of the Crow Tribe) against an Indian couple (the Plainbulls), alleging that they trespassed on tribal trust land and failed to comply with orders to pay annual grazing fees on the Crow reservation. Pursuant to 25 U.S.C. § 201, the United States brought the action against the Plainbulls in federal district court. Concluding that the action "essentially involves the enforcement of a tribal resolution against a tribal member," the district court granted the Plainbulls' motion to dismiss on abstention grounds. *Id.* at 725. On appeal, this court affirmed, holding that the district court's decision to abstain was not an abuse

of discretion. *Id.* at 728 ("Because the Plainbulls [members of the Crow Tribe] grazed their cattle on tribal land without obtaining a tribal permit, the Government should have filed in the tribal court."). In short, this court in *Plainbull* relied upon the exhaustion doctrine (*National Farmers Union* and *Iowa Mutual*), and had no occasion to discuss the *Montana* test.

### D

Finally, assuming *arguendo* that *Montana* controls, Pease argues that the district court erred in failing to conclude that Pease's action qualified under both factors. We disagree.

█ First, we are not persuaded by Pease's contention that the Crow Allotment Act of 1920 gave rise to a commercial agreement that enables the Tribe to qualify for jurisdiction under the first *Montana* exception. Pease stresses that the Allotment Act gave Montana sections 16 and 36 of every range and township on the reservation upon the condition that Montana would allow Crow children to attend state public schools. This contention fails because the Allotment Act does not constitute a consensual commercial agreement; in fact, "allotment of Indian land was consistently equated with the dissolution of tribal affairs and jurisdiction." *Montana*, 450 U.S. at 559–560 n. 9, 101 S.Ct. at 1255 n. 9 (citations omitted). As the district court correctly concluded, the Allotment Act is "a legislative directive from Congress."

█ Second, we reject Pease's argument that the Tribe has jurisdiction under the second *Montana* exception. Although he concedes that this action directly concerns only his particular property, he argues that the overall impact of the loss of land due to potential foreclosures could be devastating to the Tribe's land holdings and political integrity. This contention fails to establish a "*direct* effect on the political integrity, the economic security, or the health or welfare of

---

7. In fact, *Hinshaw* is also distinguishable from *A–1 Contractors*. Although the Eighth Circuit did not mention this distinction, the tribal court plaintiff in *Hinshaw*, unlike the tribal court plaintiff in *A–1 Contractors*, was a tribal member residing on the reservation. *See Hinshaw*, 42 F.3d at 1180.

the Tribe as a whole." *South Dakota v. Bourland,* 39 F.3d 868, 870 (8th Cir.1994) (emphasis added); *see Montana,* 450 U.S. at 566, 101 S.Ct. at 1258. As the Supreme Court has stated, "[t]he impact must be demonstrably serious and must imperil the political integrity, the economic security, or the health and welfare of the tribe." *Brendale,* 492 U.S. at 431, 109 S.Ct. at 3008. Pease's speculation concerning future foreclosures is insufficient to constitute the requisite imperilment.[8]

## IV

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the County.

**AFFIRMED.**

---

8. Because we affirm the district court's holding on the jurisdictional issue, we need not reach the County's sovereign immunity argument.