James R. SMITH, Plaintiff–Appellant,

v.

SALISH KOOTENAI COLLEGE; Court of Appeals of the Confederated Salish and Kootenai Tribes of the Flathead Reservation, Defendants–Appellees.

No. 03–35306.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 2004.

Filed Aug. 6, 2004.

Rex Palmer, Attorneys Inc., P.C., Missoula, MT; Lon J. Dale, Milodragovich, Dale, Steinbrenner & Binney, P.C., Missoula, MT, for the plaintiff-appellant.

Robert J. Phillips, Fred Simpson, Jr., Phillps & Bohyer, P.C., Missoula, MT, for defendant-appellee Salish Kootenai College.

John T. Harrison, Confederated Salish and Kootenai Tribes, Tribal Legal Department, Pablo, MT, for defendant-appellee Court of Appeals of the Confederated Salish and Kootenai Tribes of the Flathead Reservation.

Before: BRUNETTI, McKEOWN, and GOULD, Circuit Judges.

GOULD, Circuit Judge:

We consider an issue of increasing importance to the federal courts and to non-tribal members who live or work in or around Native American reservations: When does an Indian tribe's civil jurisdiction extend to non-tribal members? We must decide whether the Confederated Salish and Kootenai Tribes of the Flathead Reservation had the adjudicative authority to exercise civil subject-matter jurisdiction over a non-tribal member in a tort dispute that arose from a traffic accident on a public highway on the reservation.

I

This case arises from a tragic one-vehicle rollover. Appellant Smith, a citizen of Oregon, a member of the Umatilla Tribe, and a student at the Salish Kootenai College ("SKC"), was that day driving a SKC dump truck on United States Highway 93 as it ran through the Flathead Reservation. Smith was driving as part of his work on a vocational course at SKC. At the unfortunate time, the dump truck's right rear main leaf spring broke, and the truck veered sharply left. Smith tried to maintain control, but the truck rolled. The accident killed one passenger, and injured Smith and another passenger.

After the accident, the injured passenger and the estate of the deceased passenger brought suits against Smith and SKC in tribal court. Smith and SKC cross-claimed against each other. All claims were resolved before trial, save Smith's cross-claim against SKC. That cross-claim alleged that SKC was liable for the accident and also asserted a claim of spoliation of evidence. At trial in tribal court on these claims a jury rendered a verdict in favor of SKC.

Smith then sought post-judgment relief with the tribal trial court on the theory that the tribal court lacked jurisdiction over his claim. At the same time, he filed an appeal of the judgment with the tribal appeals court. The Court of Appeals of the Confederated Salish and Kootenai Tribes of the Flathead Reservation remanded the case for a ruling from the tribal trial court on the jurisdiction question. Upon remand, the tribal trial court decided that it had jurisdiction. Smith again appealed the tribal trial court's judgment to the tribal appellate court. While that second tribal court appeal was pending, Smith filed his federal court action, which is now before us, in the United States District Court for the District of

Montana. Smith, in his federal suit, sought an injunction against the tribal courts on the theory that the tribal courts lacked jurisdiction over his cross-claim, and he also sought to litigate his underlying claims against SKC.

On February 17, 2003, the tribal appellate court issued an opinion affirming the tribal trial court. The tribal appellate court concluded that "[f]or purposes of determining jurisdiction, [SKC] must be treated as a tribal entity."

On March 3, 2003, the federal district court issued its order on jurisdiction. The district court found that SKC was a tribal entity for jurisdictional purposes and that Smith's claims arose on the reservation. Then, relying solely on *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), the district court dismissed Smith's case. Smith appealed. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

## II

As we begin our analysis,[1] we first express and define the legal principles that govern a tribe's exercise of civil jurisdiction over a non-member such as Smith.

Any time a tribal court wishes to exercise civil subject matter jurisdiction over a nonmember of the tribe,[2] the framework in *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), must be satisfied. *See Nevada v. Hicks,* 533 U.S. 353, 358, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) ("Indian tribes' regulatory authority over nonmembers is governed by principles set forth in [*Montana*] which we have called the 'path-marking case' on the subject. . . .").[3]

*Montana* sets the framework of a general rule and two exceptions:

[A]bsent a different congressional direction, Indian tribes lack civil authority over the conduct of non-members on non-Indian land within a reservation, subject to two exceptions: The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare.

*Strate,* 520 U.S. at 446, 117 S.Ct. 1404. From this description, it might have been thought that *Montana* analysis applies only when there are non-members *and* the

1. We review the tribe's subject matter jurisdiction de novo. *FMC v. Shoshone–Bannock Tribes,* 905 F.2d 1311, 1313–14 (9th Cir. 1990). The tribal court's underlying findings of fact are reviewed for clear error. *Id.* at 1313. However, the application of the facts to governing law is reviewed de novo as a mixed question of law and fact. *See Suzy's Zoo v. Comm'r of Internal Revenue,* 273 F.3d 875, 878 (9th Cir.2001). Because the crux of this appeal concerns the legal implication of established facts, the mixed question of law and fact standard is appropriate. *Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). The party asserting that the tribal court had jurisdiction has the burden of proving the facts necessary to support jurisdiction. *Strate v. A–1 Contractors,* 520 U.S. 438, 456, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997).

2. "Non-members" include non-Indians and Indians who are members of other tribes. *See Nevada v. Hicks,* 533 U.S. 353, 377 n. 2, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) (Souter, J. concurring) ("The relevant distinction, as we implicitly acknowledged in *Strate,* is between members and nonmembers of the tribe."). In this case, Smith is not a member of the Confederated Salish and Kootenai Tribes, so he is a non-member.

3. A tribal court's adjudicative authority is, at most, only as broad as the tribe's regulatory authority. *Hicks,* 533 U.S. at 357–58, 121 S.Ct. 2304. Thus, while *Montana* dealt with a tribe's regulatory authority, it has been read to apply equally to a tribe's adjudicative authority. *Strate,* 520 U.S. at 453, 117 S.Ct. 1404.

claim arose on non-tribal land. We have, however, rejected such a narrow reading of *Montana.* *See Yellowstone County v. Pease,* 96 F.3d 1169, 1174 (9th Cir.1996). In *Pease,* we held that a contention that *Montana* applies only when there are non-members *and* the activity arose on non-tribal land was "unpersuasive." *Id.* at 1174. "[T]he issue presented here is whether the tribal court may assert jurisdiction over a non-Indian party (the County), and this court has called *Montana* 'the leading case on tribal civil jurisdiction over non-Indians.' " *Id.* (quoting *Shoshone–Bannock Tribes,* 905 F.2d at 1314).[4] The Supreme Court has likewise rejected a cramped reading of *Montana.* *See Hicks,* 533 U.S. at 360–61, 121 S.Ct. 2304.

For the purposes of invoking and satisfying *Montana's* pathmaking principles, the important variable is that there is a non-member of the tribe that is party to the specific claim being litigated. In the case before us, where it is not disputed that Smith is a non-member of the Confederated Salish and Kootenai Tribes, it does not matter whether SKC is a non-member, and it also does not matter whether the action arose on tribal land. *Montana* applies in any event because Smith is not a member, and that fact alone impels the need for scrutiny of tribal court jurisdiction under the principles set by *Montana.*

In reiterating that *Montana* analysis applies whenever a party to a claim is a non-member, we reject the argument that *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) (holding that tribal court had jurisdiction over a suit by a non-member against a member for a debt that arose on tribal land), but not *Montana,* applies to a suit involving a non-member that arises on tribal land. In *Strate,* the Supreme Court made clear that, after *Montana, Williams* is best understood as an example of *Montana's* first exception-not as a separate jurisdictional doctrine. *See Strate,* 520 U.S. at 457, 117 S.Ct. 1404 ("*Montana's* list of cases fitting within the first exception ... indicates the type of activities the Court had in mind: *Williams v. Lee,* 358 U.S. 217, 223, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) ...."); *see also A–1 Contractors v. Strate,* 76 F.3d 930, 937 (8th Cir.1996) (en banc) ("The [*Williams*] factual situation fits squarely under the 'consensual agreement' test for jurisdiction in *Montana* .... In fact, *Montana* specifically cited *Williams* in creating the two exceptions...."). This reading of *Williams,* along with the consistent reasoning of the Supreme Court in *Montana* and *Strate,* demands that *Montana* apply whenever there is a non-member party.[5]

Most courts addressing jurisdiction in cases where a party is a non-member have reached the same result, applying the *Montana* framework even when the underlying claim arose on tribal land. *See, e.g., Bank One, N.A. v. Brainard,* 144

---

**4.** SKC responds that *McDonald v. Means,* 309 F.3d 530 (9th Cir.2002), did not follow the *Pease* rule. We are not persuaded. The *McDonald* opinion "consider[ed] whether the facts support tribal jurisdiction under the *Montana* rule...." 309 F.3d at 537. *McDonald* did note that *Hicks* did not *explicitly* extend *Montana's* rule to suits that arose on tribal land that involve non-tribal members. 309 F.3d at 540 n. 9. Regardless, *McDonald* concluded that, "under *Montana,*" the Tribe could exercise jurisdiction based on the facts of that case. 309 F.3d at 536. *McDonald*

does not necessarily conflict with *Pease* because it does not announce a rule that *Montana* analysis only applies if there is a non-member *and* the action arose on non-tribal land. Instead, *McDonald* held that the exercise of jurisdiction in that case was permissible "under *Montana.*"

**5.** The Supreme Court has not distinguished between non-member plaintiffs and non-member defendants. *See Hicks,* 533 U.S. at 358 n. 2, 121 S.Ct. 2304.

F.Supp.2d 640, 642–44 (S.D.Miss.2001) (holding that non-member plaintiff had to exhaust tribal remedies in a suit to compel arbitration because of a colorable claim of consensual relationship under *Montana* with the member defendant); *Rodriguez v. Wong,* 119 Wash.App. 636, 82 P.3d 263, 267 (2004) (holding that a non-member's claim of racial discrimination against the executive director of the Indian gaming commission fell under both *Montana* exceptions); *Ortego v. Tunica Biloxi Indians,* 865 So.2d 985, 988 (La.Ct.App.2004) (holding that a non-member's suit for worker's compensation against tribal casino fell within *Montana's* first exception). *But see Winer v. Penny Enters.,* 674 N.W.2d 9, 16–17 (N.D.2004) (holding that when a non-member plaintiff sues a member defendant for an accident on a state road within the boundary of the reservation, *Montana* analysis does not apply, *Williams* controls, and the tribal court has exclusive jurisdiction).

Because "the general rule of *Montana* applies to both Indian and non-Indian land" whenever a non-member is a party to a claim litigated in tribal court, *Hicks,* 533 U.S. at 360, 121 S.Ct. 2304, we turn to the *Montana* framework to determine whether tribal jurisdiction exists here.

### III

■ Because the *Montana* framework applies to resolution of non-member Smith's claim in tribal court, we are required to start with a presumption that the tribal court did not have jurisdiction. *Atkinson Trading Co. v. Shirley,* 532 U.S. 645, 651, 659, 121 S.Ct. 1825, 149 L.Ed.2d 889 (2001). That presumption can be rebutted; whether the tribal court has jurisdiction depends on whether the claims litigated fit within either established *Montana* exception. The Supreme Court has set some guideposts that we consider. At

one extreme, *Strate* holds that when a claim arose on non-Indian land and both parties were non-members, the tribe had no adjudicative authority. 520 U.S. at 456–59, 117 S.Ct. 1404 (finding that neither of the *Montana* exceptions applied). At the other extreme, if a plaintiff were a non-member, a defendant were a member, and the claim were to arise on tribal land, then the first *Montana* exception may apply. *See Strate,* 520 U.S. at 457, 117 S.Ct. 1404 (holding that *Williams* falls within the first *Montana* exception).

Our Ninth Circuit cases give the same guidance. If the plaintiff is a tribal member, the defendant a non-member, and the action arises on non-tribal lands, we routinely have held that the tribal courts lack jurisdiction. *See, e.g., Boxx v. Long Warrior,* 265 F.3d 771, 777–78 (9th Cir.2001); *Burlington N. R.R. Co. v. Red Wolf,* 196 F.3d 1059, 1065–66 (9th Cir.1999); *Wilson v. Marchington,* 127 F.3d 805, 814 (9th Cir.1997). However, if the plaintiff is a member, the defendant is a non-member, and the action arises on tribal lands, the subtleties of the cases have led us to differing results, both upholding and rejecting tribal court jurisdiction, depending on the precise facts. *Compare Pease,* 96 F.3d at 1176–77 (finding no jurisdiction), *with McDonald,* 309 F.3d at 540 (finding jurisdiction when the plaintiff was a member and the accident occurred on tribal land). Thus, our cases require analysis of the precise facts in a given case to assess the applicability of a *Montana* exception.

### A

Ancillary to examining the *Montana* exceptions, and given Smith's non-member status, the Supreme Court and the Ninth Circuit cases cited above highlight two relevant variables for analyzing tribal court jurisdiction: Whether SKC is a member of

the tribe and where the claims arose.[6] Neither of these variables is alone controlling, but the answers are relevant to determining if any *Montana* exception applies.

### 1

To ascertain whether SKC is a member or non-member of the tribe for tribal jurisdiction purposes, we would normally determine SKC's status as to whether it is a tribal entity. In other words, we would ask whether SKC operates as an arm of the tribe.

In this case, however, we hesitate without necessity to make an important pronouncement on SKC's status as a tribal member, which may have implications for it or the state external to our case. The record for such a decision if made now would necessarily be based solely on the limited evidence presented by President McDonald's affidavit. If it were necessary to remand for determination on this issue of SKC's status as a tribal entity, we would expect the district court to develop a more complete factual record to resolve this type of question. However, we have determined that regardless of SKC's status, we can resolve the case before us. Whether SKC is a tribal member *vel non* does not affect our ultimate determination on tribal court jurisdiction, because, as we explain below, even if we were to view SKC as a tribal member, we would still find that the tribal courts lacked jurisdiction over Smith's claims against SKC. For purposes of our *Montana* analysis, we will assume, but we do not decide, that SKC is a tribal member.

**6.** *Hicks* suggests that where the action arose is only a factor in the *Montana* analysis. 533 U.S. at 360, 121 S.Ct. 2304 ("[T]he general rule of *Montana* applies to both Indian and non-Indian land. The ownership status of the land, in other words, is only one factor to consider [when applying the second *Montana* exception]."); *see also id.* at 381, 121 S.Ct.

### 2

We next address where the claims arose. There are two claims by Smith in this case: (1) negligence and products liability and (2) spoliation of evidence. The parties contest where each claim arose.

#### a

■ The negligence/products liability claim arose on U.S. Highway 93. This is non-tribal land. *See Red Wolf,* 196 F.3d at 1063; *Marchington,* 127 F.3d at 813–14. As a general rule, a tort does not "arise" until all elements of the cause of action exist, including causation and damages. "[A] tort is not wrongful conduct in the air; the arrow must hit its mark. Until there is hurt, there is no tort." *Heil v. Morrison Knudsen Corp.,* 863 F.2d 546, 550 (7th Cir.1988) (internal citation omitted). Stated simply, the tort law is often consistent with the sporting maxim: No harm, no foul.

Both Montana law and tribal law conform to the understanding that a tort claim cannot arise until all of the elements of the tort (including damages) are present. *See Gabriel v. School Dist. No. 4,* 264 Mont. 177, 870 P.2d 1351, 1353 (1994) (holding that because death is a necessary element in a wrongful death suit, the cause of action arises where the death occurs); *Laws of the Confederated Salish and Kootenai Tribes, Codified* § 4–1–105(1) (Jan 1, 2000) ("a claim or cause of action accrues when all elements of the claim or cause exist or have occurred and the right to

2304 (Souter, J., concurring) ("After *Strate,* it is undeniable that a tribe's remaining inherent civil jurisdiction to adjudicate civil claims arising out of acts committed on a reservation depends in the first instance on the character of the individual over whom jurisdiction is claimed, not on the title to soil on which he acted.").

maintain an action on the claim is complete.") *available* *at* http://www.cskt.org/documents/laws-codified.pdf.

The Appellees' arguments to the contrary are unavailing. Appellees in essence urge that if the dump truck was negligently maintained, that necessarily must have occurred on tribal land. But even if much, or even most, of the negligent maintenance behavior transpired on the reservation, that would not provide a definitive answer for where the claim arose when Smith's dump truck rolled. *Cf. Sosa v. Alvarez–Machain,* —— U.S. ——, 124 S.Ct. 2739, 159 L.E.2d 718 (2004) (holding that "garden-variety" torts under the Federal Tort Claims Act arise in the country where the damage occurred, not in the country where the decision to commit the tort occurred). To hold otherwise would, for example, imply that all products liability actions arise in the place of manufacture, not the place of injury.

■ Adopting Appellees' argument is foreclosed by our precedent. In *Mc-Donald,* 309 F.3d at 540, the crux of the claim was that a non-tribal member defendant had allowed a horse to wander off his horse ranch, which was on non-tribal land. The horse regrettably ambled onto Route 5, where the plaintiff crashed into the horse, causing severe injury to the plaintiff. We held that because the action arose on Route 5, which was tribal land, the tribal court had jurisdiction to hear the suit. Implicit in such a ruling is that the action arose where the accident took place, where the injuries occurred, notwithstanding that most, if not all, of the negligent conduct permitting the horse to wander off must have taken place at the horse ranch. *Id.* at 535–36. *Cf. Allstate Indem. Co. v. Stump,* 191 F.3d 1071, 1074–75 (9th Cir. 1999) (holding that in the case of a suit by a tribe member for insurance bad faith when a traffic accident took place on-reservation, the cause of action arises at the site of the accident, not at the off-reservation offices of the insurance company where the decision to deny coverage was made). Thus, in the context of highway accidents, the cause of action typically arises, for tribal jurisdiction purposes, where the accident took place, not where the underlying negligent conduct took place.

**b** .

For the spoliation of evidence, the legal framework is much the same: The action arises where the last necessary predicate act for the tort is complete. The resolution of this question, however, is less clear because it is not certain from the record where the evidence was allegedly destroyed. The district court assumed that "such conduct occurred at SKC." It is one thing to assume facts, make the best case for a party, and show why that case is insufficient for tribal jurisdiction, but it is another to assume facts in order to hold, as here, that a tribal court *had* subject matter jurisdiction. The former is permissible judicial reasoning; the latter is generally not correct in law, because the party asserting tribal jurisdiction has the burden of proving all facts necessary for tribal jurisdiction. *Strate,* 520 U.S. at 456, 117 S.Ct. 1404. It is possible that relevant evidence was destroyed on the public right of way, or in some office in a town off the reservation. Without proper evidentiary foundation, the district court could not "presume" a fact necessary for the tribe's exercise of jurisdiction, because that assumption read the facts in the light most favorable to the *moving* party. *See, e.g., W. Ctr. for Journalism v. Cederquist,* 235 F.3d 1153, 1154 n. 1 (9th Cir.2000) (per curiam) (noting that for both motions to dismiss and for summary judgment, the evidence must be read in favor of the non-

moving party). In any event, as explained below, even if the spoliation claim arose on the reservation, it does not affect our decision on whether there is tribal jurisdiction. Thus we will assume, though we do not decide, that the spoliation claim arose on the reservation.

### B

With the two assumptions that we have identified, viewing SKC as a tribal entity[7] and viewing the spoliation claim, but not the negligence claim, as arising on the reservation, we now consider the two *Montana* exceptions.

### 1

■ *Montana's* first exception "covers activities of non-members who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Strate,* 520 U.S. at 456–57, 117 S.Ct. 1404 (internal quotation marks omitted). The consensual relationship must arise from "the commercial dealing, contracts, leases, or other arrangements." *Atkinson Trading Co.,* 532 U.S. at 655, 121 S.Ct. 1825 (internal quotation marks omitted); *see also Boxx,* 265 F.3d at 776 (reaffirming the principle that the first exception must "arise from some form of commercial transaction" and that "such arrangements also must be of a commercial nature."). Thus, the usual case of a consensual commercial relationship often involves sales, loans, or permit taxes. *Strate,* 520 U.S. at 457, 117 S.Ct. 1404.

■ In this case, the only apparent[8] qualifying relationship is Smith's status as a student of SKC. Smith argues that his status as a student of SKC does not automatically imply the necessary consensual relationship. "A nonmember's consensual relationship in one area thus does not trigger tribal civil authority in another—it is not in for a penny, in for a Pound." *Atkinson Trading Co.,* 532 U.S. at 656, 121 S.Ct. 1825 (internal quotation marks omitted). Smith argues that the court's focus should be on the tort itself, not on SKC's contractual relationship with Smith.

If Smith was injured by an SKC agent while off-campus and Smith merely happened to be a student of SKC, then in our view the consensual relationship between Smith and SKC would not be a sufficient nexus for the tribal court to assert jurisdiction. The facts of this case, however, differ. Smith was driving the dump truck as part of the vocational training provided by SKC, and one of the passengers of the truck may have been actually instructing Smith at the time of the accident. It could be argued that the accident arose in Smith's capacity as a student of SKC, and Smith would not have been in the dump truck apart from his course.

On the other hand, there is a strong rejoinder. In *County of Lewis,* a tribe member brought an action against a county sheriff's deputy for a tort allegedly committed on the reservation. 163 F.3d at 514–15. There was an agreement between the state and the tribe that county officers

---

7. As a preliminary matter, if SKC were to be determined to be a non-member of the tribes, then it is settled that the tribal court had no jurisdiction because both parties are non-members and the events arose on non-tribal land, providing no purchase for either of the *Montana* exceptions. *See, e.g., Hicks,* 533 U.S. at 360, 121 S.Ct. 2304 ("[W]ith one minor exception, we have never upheld under *Montana* the extension of tribal civil authority over nonmembers on non-Indian land.").

8. It may be argued that by filing the cross-claim, Smith consented to jurisdiction. We reject this theory, because Smith was required to exhaust his remedies in tribal court. *Strate,* 520 U.S. at 453, 117 S.Ct. 1404.

could make arrests on the reservation for certain minor crimes. We held that this type of relationship was not the basis for the consensual relationship exception. *Id.* at 515. Instead, we held that the exception applies either when the tribe directly regulates non-tribe activity on tribal land or to "lawsuits between a private party and the tribe or tribal members arising from an on-reservation transaction or agreement." *Id.* In light of this narrow view of "on-reservation transaction or agreement," there is not tribal jurisdiction for a tort action that derives, at best, indirectly from the "on-reservation agreement."

This interpretation of "on-reservation" activity has prevailed in our circuit. In *Stump,* we narrowly construed the first *Montana* exception in the context of a bad faith insurance claim. 191 F.3d at 1076. The claim arose on the reservation, the plaintiff was a member of the tribe, and the defendant was a non-member. The district court concluded that the tribal court had jurisdiction under the first *Montana* exception. We reversed, and therefore required the plaintiff to exhaust tribal remedies,[9] holding that "it appears to us that the dispute arises not from the parties' contractual relationship, as the first *Montana* exception requires, but from alleged conduct governed by the Montana Unfair Claims Settlement Practices Act, MCA § 33–18–242(3)." *Id.* In a similar vein, the dispute in this case arose from separate Montana tort law that applied between SKC and Smith rather than arising from any contractual relationship Smith has as student at SKC.

If we were to accept SKC's argument that tribal jurisdiction over tort actions arises from the consensual student relationship in and of itself, that would have broad and undue implications for thousands of college students. If SKC wants its students to consent to tribal court jurisdiction on any dispute with it, it may ask them to so agree in connection with the enrollment process, and with a fair disclosure. Having failed to do that, SKC cannot argue that the *Montana* exception for a consensual relationship should be implied in a tort action from the student relationship alone.

We hold that the Smith's negligence claim arose not from Smith's consensual contractual relationship as a student at SKC, but from separate duties that SKC owed Smith, which duties were derived not from contract but from Montana tort law. Following *Stump,* we hold that no qualifying commercial relationship existed with respect to the tort actions. The first *Montana* exception does not apply to the negligence claim in this case.[10]

We take a similar approach in our analysis of the spoliation claim. It also does not arise from the consensual contractual relationship between Smith and SKC relating to Smith's plan to be educated at the college. Spoliation of evi-

---

9. *Stump* holds that a party generally cannot sue in federal court to block tribal court jurisdiction until first exhausting remedies in tribal court including a tribal court appeal in which the question of jurisdiction may be raised; federal courts generally should not intervene before tribal appellate review is completed. 191 F.3d at 1073. There is an exception if the existence or lack of tribal court jurisdiction is "plain." *Id.*

10. *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), is distinguishable because there the tribal court was allowed to exercise civil jurisdiction over a non-member's suit on a debt owed by a member and created on tribal land. *Id.* at 223, 79 S.Ct. 269. The suit arose directly from the consensual commercial relationship (the debt contract). This type of suit falls within the first *Montana* exception as we have applied it in *County of Lewis* and *Stump.*

dence is a tort that by its nature depends on the existence of another separate claim. Under Montana law, the tort of spoliation of evidence (whether intentional or negligent) requires "the existence of a potential lawsuit." *Oliver v. Stimson Lumber Co.*, 297 Mont. 336, 993 P.2d 11, 21 (1999). Spoliation of evidence can only occur in connection with some other lawsuit; it is intrinsically bound up in the same transaction as the underlying lawsuit (here, the negligence and products liability claim). Just as the tort of spoliation depends on the existence of a potential lawsuit, so too does the applicability of the first *Montana* exception turn on the underlying lawsuit, actual or potential, that supports the spoliation claim. If the underlying claim is, for example, a loan between a member and a non-member on tribal land, then any spoliation arising on tribal land would logically fall under the first *Montana* exception. However, when the claim underlying the spoliation claim does not itself trigger a *Montana* exception, then logically the fact that spoliation occurred on tribal land does not impel a different conclusion. The "consensual relationship" for the spoliation claim is the potential lawsuit that gives rise to the enforceable duty to preserve evidence; if that potential lawsuit is not subject to tribal civil jurisdiction, neither is the spoliation claim. Thus, we hold that *Montana's* first exception cannot apply to the spoliation claim here because the potential lawsuit underlying the spoliation claim does not qualify for tribal jurisdiction under the first *Montana* exception.

### 2

The second *Montana* exception concerns conduct that "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." 450 U.S. at 566, 101 S.Ct. 1245. This exception must be interpreted with the purpose of the exception in mind. *Strate*, 520 U.S. at 458–59, 117 S.Ct. 1404.

"The exception is only triggered by *nonmember conduct* that threatens the Indian tribe; it does not broadly permit the exercise of civil authority whenever it might be considered 'necessary' to self-government." *Atkinson Trading Co.*, 532 U.S. at 657 n. 12, 121 S.Ct. 1825 (emphasis in original). Moreover, the tribe's interest in the political, economic, health, or welfare effects of a particular action is not enough, by itself, to meet this exception. *County of Lewis*, 163 F.3d at 515. Otherwise, the exception would swallow the rule.

The tribe argues, however, that its interest in "maintaining public safety" is met here. We reject the tribe's argument. If a vague assertion of "public safety" were good enough for this exception and "*Montana's* second exception require[d] no more, the exception would severely shrink the rule." *Strate*, 520 U.S. at 458, 117 S.Ct. 1404; *see also Boxx*, 265 F.3d at 777–78. The same analysis applies to the tribal court determination that the availability of higher education is an important tribal interest. A lawsuit that would seek to prevent the tribe from ever creating any institution of higher learning may meet the second *Montana* exception, but a garden-variety tort action against an already established college certainly does not. Accepting general "public safety" or "importance of higher education" as valid examples of the second *Montana* exception would convert the exception into the rule, and consequently, we reject these arguments.

The tribe also argues that adjudication over an arm of the tribe would erode the "political integrity" of the tribe. This argument also fails. It is undisputed that SKC is a Montana non-profit corpora-

tion and can be sued in that capacity, thus it can be fairly said that any political integrity risk was created by the tribe. Even if the tribe did not itself create this risk, the tribe does not explain how its integrity will be eroded by permitting this tort litigation to proceed in federal court. A suit against SKC in federal court does not impinge upon the interests of the tribe in the way that motivates the second *Montana* exception. Smith's claims present a simple tort case and nothing more. To qualify for the second *Montana* exception, Smith's action would have to endanger tribal integrity, *Atkinson Trading Co.*, 532 U.S. at 659, 121 S.Ct. 1825, and mere involvement of a tribal member in federal court litigation is not sufficient, *Marchington*, 127 F.3d at 815. Indeed, "the impact must be demonstrably serious and must imperil the political integrity, the economic security, or the health and welfare of the Tribe." *Marchington*, 127 F.3d at 815 (internal quotation marks omitted). This simple tort suit against a community college does not rise to that level.[11]

Even if SKC is assumed to be a member of the tribe, and even if the spoliation claim arose on tribal land, the second *Montana* exception does not apply to either the negligence claim or the spoliation claim.

### IV

We conclude that, because Smith is a non-member of the Confederated Salish and Kootenai Tribes of the Flathead Reservation, the tribal courts could only exercise civil jurisdiction over Smith if one of the two *Montana* exceptions applies. Because neither exception applies, we hold that the tribal court lacked civil jurisdiction over Smith's claims against SKC. We reverse and remand the case for the district court to consider Smith's claims on their merits.

**REVERSED and REMANDED.**

---

**11.** Similarly, the spoliation claim does not trigger the second *Montana* exception: Destruction of evidence from a mere traffic accident does not sufficiently jeopardize the integrity or existence of the tribe for the second *Montana* exception to apply.